UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00062-FDW

DEBRA M. CHILDRESS, )
)
    Plaintiff, )
)
vs. )
) ORDER
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
    Defendant. )
)

THIS MATTER is before the Court on Plaintiff Debra M. Childress's Motion for Summary Judgment (Doc. No. 11) filed on June 8, 2018, Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 13) filed on August 7, 2018, and Plaintiff's Response (Doc. No. 17) filed on September 4, 2018. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the COURT DENIES Plaintiff's Motion for Summary Judgment and GRANTS Commissioner's Motion for Summary Judgment.

I. BACKGROUND

Plaintiff filed an application for disability benefits under Title II on March 28, 2014, alleging disability. (Tr. 15). After her application was denied initially and upon reconsideration (Tr. 130, 134, 137), Plaintiff requested a hearing (Tr. 147). A hearing was held on December 21, 2016. (Tr. 15, 33, 188). On April 26, 2017, the ALJ issued an unfavorable decision. (Tr. 12). Plaintiff's request for review by the Appeals Council was denied on December 6, 2017. (Tr. 1).

1

The ALJ determined Plaintiff was not disabled since the date the application was filed. (Tr. 15). The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and that she had severe impairments of schizophrenia, bipolar, fibromyalgia, anxiety, depression, and obesity. (Tr. 17). The ALJ determined that none of these impairments nor any combination of the impairments met or medically equaled a per se disabled medical listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 17). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 416.967(b) except she should be able to alternate positions between sitting and standing twice per hour. She is precluded from climbing ropes, ladders and scaffolds, should avoid concentrated exposure to unprotected heights, moving machinery and other hazards and limited to occasional ramp and stair climbing. The claimant is further limited to simple, routine and repetitive tasks and unskilled work with no constant changes in routines, no complex decision making and no crisis situations. She is limited to occasional interaction with supervisors and co-workers but precluded from public contact. The claimant can stay on task for two hours at a time throughout the workday.

(Tr. 19). The vocational expert ("VE") testified that the Plaintiff's past relevant work as a nursing assistant exceeded Plaintiff's RFC and that Plaintiff was unable to perform the duties of her past relevant work. (Tr. 26). In response to a hypothetical that factored in Plaintiff's age, education, work experience, and RFC, the VE testified that an individual with these limitations could perform jobs in the national economy and listed jobs, which work exists in significant numbers in the national economy. (Tr. 26-27). Thus, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act. (Tr. 27).

Plaintiff has exhausted all administrative remedies and now appeals. (Doc. No. 1). In Plaintiff's motion for summary judgment, Plaintiff claims that the ALJ's decision should be reversed because (1) the ALJ relied on testimony from the VE that appears to conflict with the

Dictionary of Occupational Titles ("DOT"), and (2) the ALJ's decision failed to sufficiently explain his determination that Plaintiff could perform light level work for two-hour intervals. (Doc. No. 12 at 5).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL

4

> 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

A. Apparent Conflict

Plaintiff argues that the ALJ's reliance on testimony from the VE that appears to conflict with the DOT necessitates remand. (Doc. No. 12 at 5). When the ALJ relies on the testimony of a VE in step five to determine disability, the ALJ has the responsibility to (1) inquire whether there are any conflicts between the VE's testimony and the DOT; (2) elicit a reasonable explanation for

5

any apparent conflict from the VE; and (3) explain how the conflict is resolved in the ALJ's decision. Pearson v. Colvin, 810 F.3d 204, 208-10 (4th Cir. 2005); SSR 00-4p. A conflict is apparent if the "[VE's] testimony seems to, but does not necessarily, conflict with the [DOT]." Pearson, 810 F.3d at 209. "[I]f the ALJ does not elicit [an] explanation [for an apparent conflict], then the [VE's] testimony cannot provide substantial evidence to support the ALJ's decision." Id.; see also Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016). Plaintiff identifies several components for listings in the DOT at issue.

    i.    Interaction with supervisors and coworkers

Plaintiff argues that there is an apparent conflict between the VE testimony and O* Net. (Doc. No. 12 at 8-9). The ALJ is not required to identify or address conflicts between VE testimony and O* Net. Wilson v. Berryhill, No. 1:17-cv-00246-FDW, 2018 WL 3127467, at *4 (W.D.N.C. June 26, 2018); see also SSR 00-4p, 2000 WL 1898704, at *2-3 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy."). This Court has repeatedly held that O* Net cannot form the basis for the conflict between VE testimony and the DOT. See Wilson, 2018 WL 3127467 at *4 (collecting cases). Like in Wilson, Plaintiff relies almost exclusively on O*Net statistics to support her contention that the ALJ erred by not resolving conflicts suggested by the VE testimony and the extent to which she can have contact with supervisors, the public, and co-workers. See id. at *5. However, because this Court does not recognize apparent conflicts between VE testimony and the O*Net, and Plaintiff has failed to provide any evidence of a conflict between VE testimony and the DOT, the Court finds that there is no inconsistency to resolve. See id. Thus, the Court finds that the ALJ made no error.

ii. No production rate work

Plaintiff argues that the occupations identified by the VE "appear to be either a production job, are part of the production process, or have a demand pace," which she posits could conflict with the hypothetical precluding production rate work. (Doc. No. 12 at 11-12). However, Plaintiff's argument is without merit.

This Court has held that the job of electronics worker, Dixon v. Berryhill, No. 3:16-cv-00254-MR, 2018 WL 3833501, at *4 (W.D.N.C. Aug. 13, 2018), and the job of inspector and hand packager, Sigmon v. Berryhill, No. 5:17-cv-120-RJC-DSC, 2018 WL 3738227, at *4 (W.D.N.C. Aug. 7, 2018), do not constitute production rate work. Plaintiff has not cited to any case law or the DOT to support her contention that laundry folder is a production rate job. Instead, Plaintiff relies on the O*Net to support her interpretation of the job, which this Court has repeatedly held cannot be used as the basis for a conflict with VE testimony. See Wilson, 2018 WL 3127467 at *4. Further, even if the Court were to find that laundry folder constituted production pace work, the error would be harmless because the two other jobs identified by the VE do not require production work. See Dixon, 2018 WL 3833501 at *4. Thus, the Court finds that the ALJ made no error.

iii. Simple, routine, repetitive tasks

The component for listings in the DOT at issue here is the General Educational Development ("GED"). The GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991), 1991 WL 688702. These aspects are "of a general nature" and "[o]rdinarily . . . obtained in elementary school, high school, or college" but "may be obtained from experience and self-study." Id. The GED scale is broken down into three divisions: Reasoning Development, Mathematical Development, and Language Development. Id. The Reasoning Development division has 6 levels. Id. For Reasoning Code 2, an individual must

"[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Id. With this definition in mind, the Court turns to the case at hand.

In this case, the ALJ limited Plaintiff to "simple, routine, and repetitive tasks" in the RFC. (Tr. 19). In the response to a hypothetical factoring of Plaintiff's age, education, work experience, and RFC, testified that the following jobs existed in the national economy for such an individual: Laundry Folder, DOT #369.687-018; Inspector and Hand Packager, DOT #559.687-074; and Electronics Worker, DOT #726.687-010. (Tr. 73). All of the occupations have a Reasoning Level of 2 listed in the DOT. (Tr. 73).

The Fourth Circuit has not addressed whether an RFC limitation of "simple, routine, and repetitive tasks" apparently conflicts with occupations with a Reasoning Level of 2.[1] However, this Court has found no apparent conflict. See, e.g., Hammond v. Berryhill, No. 3:17-cv-96-FDW, 2018 WL 1472488, at *7 (W.D.N.C. Mar. 23, 2018) (holding no conflict with Reasoning Level 2); Bushaw v. Berryhill, No. 1:17-cv-192-FDW, 2018 WL 1972711, at *4 (W.D.N.C. Apr. 26, 2018). As defined by the Fourth Circuit, an apparent conflict is something that "seems to, but does not necessarily, conflict with the Dictionary." Pearson, 810 F.2d at 209. Identifying an apparent conflict does not involve more than "compar[ing] the express language of the Dictionary and the vocational expert's testimony." See id. at 209. Here, the RFC of "simple, routine, and repetitive tasks" do not seem to conflict with the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved instructions" or "deal with problems involving a few concrete variables in or from standardized situations[.]" U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991), 1991 WL 688702. Few is "a small number of." Several Definition, Oxford Dictionary,

---

[1] As reflected in the parties' briefs, the district courts in this circuit have not reached a consensus on this matter.

8

https://premium.oxforddictionaries.com/us/english/ (last visited Oct. 3, 2018). Further, the format of the instructions, "written or oral[,]" does not seem to conflict with the RFC limitation. The description of Level 2 and the occupations identified by the VE do not suggest an ability beyond an RFC of "simple, routine, and repetitive tasks" is required. There is nothing in the language to alert the ALJ of a discrepancy. Pearson, 810 F.3d at 210 (rejecting claimant's interpretation of SSR 00-4p, which "would allow the claimant to nitpick an ALJ's or expert's word choice on appeal"). Therefore, without any apparent conflict, the ALJ had no obligation to elicit an explanation from the VE or resolve any apparent conflict in his decision. Pearson, 810 F.3d at 208-10.

  iv. Sit/Stand option

Plaintiff argues that the ALJ erred by failing to identify or make an inquiry of the VE about apparent conflicts between the occupations identified and the sit/stand option. (Doc. No. 12 at 15). However, Plaintiff relies on her interpretation of occupations as a basis for an apparent conflict as opposed to case law. This Court has held that "[w]hile SSR 00-4p requires the ALJ to resolve conflicts between the VE's testimony and the DOT, this Court already recognizes no conflict between the two regarding the sit-stand option." Cogar v. Colvin, No. 3:13-cv-380-FDW, 2014 WL 1713795 at *7 (W.D.N.C. Apr. 30, 2014) ("Because the DOT is silent on the availability of the option, it cannot be said that a VE testifying about the option would be in conflict with the DOT."); see also Lusk v. Astrue, 1:11-cv-196-MKR, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013) ("[T]he DOT is silent as to the availability of a sit/stand option for these particular positions; as such, it was entirely proper for the ALJ to obtain and consider VE testimony in order to supplement the DOT job descriptions."). Thus, the Court finds that the ALJ made no error.

B. RFC Determination

Plaintiff's second assignment of error is that the ALJ failed to explain his RFC determination that Plaintiff can perform light work for two-hour intervals. (Doc. No. 12 at 17-18).

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); see also 20 C.F.R. § 404.1545(a)(1). SSR 96-8p requires that the ALJ assess the claimant's ability to perform work related functions listed in 20 C.F.R. § 494.1545(b), (c), and (d), including the ability to: sit; stand; walk; lift; carry; push; pull; perform manipulative and postural functions; understand, remember, and carry out instructions; and respond appropriately to supervision, co-workers, and work pressures in a work setting. 1996 WL 374184 at *1. In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). The RFC is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7. If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id.

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] ... which evidence the ALJ found credible and why." Monroe, 826 F.3d at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th

Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). Simply put, this means an ALJ must "[s]how [his] work." Once the ALJ performs a function-by-function analysis, only then may an ALJ express the RFC of the exertional levels of light, medium, heavy, and very heavy. See SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). However, an ALJ who merely summarizes evidence he finds credible, useful, and consistent with his determination of Plaintiff's exertional level fails to meet his obligation under Mascio. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018).

    i. Light Work

At the disability determination hearing, the ALJ found that Plaintiff was capable of "light work" as defined in 20 CFR § 416.967(b) except she should be able to alternate positions between sitting and standing twice per hour. (Tr. 19). Light work, as defined by 20 C.F.R § 404.1567, requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing." A plaintiff is qualified to perform light work only if he or she is qualified to do substantially all of these activities. See id. A person who must be permitted to stand or walk for a period of time before returning to sitting—i.e., the "sit/stand" limitation—is capable neither of the prolonged sitting required for most sedentary work, nor of the prolonged standing required for most light work. Elliot v. Astrue, No. 2:09-cv-37, 2011 WL 2506335, at *4 (W.D.N.C. June 22, 2011) (citing SSR 83-12 at *4).

The Court finds that the ALJ's determination that Plaintiff could perform some types of light work is supported by substantial evidence. As summarized by the Commissioner, in making this determination,

> The ALJ considered Plaintiff's documented allegation of pain, noted that her examinations showed only tenderness but otherwise no musculoskeletal

11

> abnormalities, that she was treated with a pain medication, and that her x-rays revealed, at worst, minimal degenerative changes (citing Tr. 20). The ALJ also considered Plaintiff's course of treatment, noting that she had not consistently sought treatment for back problems or pursued more aggressive treatments such as injections or physical therapy (citing Tr. 20). The ALJ concluded that the medical evidence did not support difficulties with fine or gross movements or difficulty with ambulation (citing Tr. 21). The ALJ also considered the effects of her obesity, noting that this condition could reasonably impose mechanical strain on weight-bearing joints and contribute to pain (citing Tr. 23). The ALJ also considered the medical opinions of record; however, there was no opinion on Plaintiff's physical work-related abilities. The ALJ noted that the State agency medical consultants who reviewed the file at the initial and reconsideration levels of review found that there was insufficient evidence to make a determination (citing Tr. 24, 108-09 118-19).

(Doc. No. 14 at 8). Here, the ALJ considered all of the relevant medical evidence, as well as Plaintiff's own allegations regarding her experiences, before concluding that Plaintiff retained the ability to perform various jobs that constitute light work and allow for a sit-stand option. Importantly, the ALJ gave several reasons, citing to the record, for discrediting Plaintiff's allegations that she was unable to perform the requisite job functions. The ALJ also evaluated Plaintiff's credibility in determining Plaintiff's RFC as required by Mascio.

Plaintiff appears to rely on Woods as her basis for remand on the issue of the ALJ's "light work" functional exertion determination. (Doc. No. 12 at 20, 22). In particular, Plaintiff argues that the ALJ failed to "explain how he concluded, based on the evidence, that [Plaintiff] could actually perform the tasks required by 'light work.'" (Doc. No. 12 at 20). However, Plaintiff's reliance on Woods is erroneous. First, the Fourth Circuit's decision to reverse and remand in Woods was based on the ALJ's failure to give substantial weight to the NCDHHS disability determination or, in the alternative, give "persuasive, specific, valid reasons" for not doing so. Woods, 888 F.3d. at 692. The state disability agency did not make a disability determination in this case, (Tr. 24), nor did Plaintiff allege this assignment of error, (Doc. No. 12 at 19-21). Second, the Fourth Circuit's determination that the ALJ failed to explain that the plaintiff could actually

perform "medium work" was based on the ALJ's mere summarizing of evidence he found credible, useful, and consistent. Woods, 888 F.3d at 694. Unlike Woods, the Court finds that the ALJ provided sufficient explanation to account for his determination of Plaintiff's RFC. The ALJ neither merely gave summary conclusions devoid of analysis, nor simply cited to evidence he deemed consistent. But see id.; Adrian v. Berryhill, No. 4:17-cv-99-KS, 2018 WL 4293368, at *5 (E.D.N.C. Sept. 10, 2018) (holding that "[s]imply summarizing evidence and then stating a conclusion will not suffice"). Thus, the Court finds that the ALJ complied with Mascio.

    ii.  Remain on Task for Two Hours at a Time

When the ALJ determines at step three that the individual has moderate difficulties in concentration, persistence, or pace, "the RFC must reflect the claimant's work functions as to this limitation unless the ALJ explains why a limitation in concentration, persistence, or pace at step three does not translate into a limitation on the claimant's capacity to do-work related activities." Watts v. Berryhill, No. 3:16-cv-850-FDW, 2017 WL 6001639, at *4 (W.D.N.C. Dec. 4, 2017). The ability to concentrate, persist, or maintain pace refers to the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion to tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. 1, § 404 12.00(C)(3). The Fourth Circuit has held that an ALJ does not account for a claimant's difficulties in concentration, persistence, or pace by restricting work functions to "simple, routine tasks or unskilled work" but does account for such difficulties by restricting the ability to stay on task." Mascio, 780 F.3d at 638 (citations omitted).

Consistent with the Fourth Circuit's holding, the RFC in this case accounted for Plaintiff's limitation in concentration, persistence, or pace in the RFC by limiting her work to "simple, routine and repetitive tasks and unskilled work with no constant changes in routines, no complex decision making and no crisis situations" and to the ability to "stay on task for two hours at a time

13

throughout the workday." (See Tr.19). "An explanation of how long a claimant is able to sustain concentration and attention to perform tasks is a direct accounting of the claimant's ability to stay on task—and difficulties in concentration, persistence and pace." Roope v. Berryhill, No. 5:16-cv-48-GCM, 2017 WL 1364603, at *3 (W.D.N.C. Apr. 12, 2017). In Roope, while the ALJ did not expressly use the term "on task," this Court found that this limitation reflected the plaintiff's ability to stay on task for more than two hours. Id.

The ALJ then substantiated his conclusion for these work-related abilities. (See Tr. 21-26).[2] The ALJ examined Plaintiff's mental health records and examinations from the Psychiatric Services of the Carolinas that showed Plaintiff exhibited "no more than mild to moderate symptoms" and that her medications were "helpful in controlling the claimant's symptoms." (Tr. 21) (citing Tr. 452, 409-18). The ALJ also detailed Plaintiff's complaints in contrast to her medical records that reflected her affirmations that she is doing better, especially when taking medication, and assessments finding that her mental and emotional condition improved. (Tr. 19-23). The ALJ evaluated the medical opinions, assigning little weight to those that were inconsistent with the record. (Tr. 22-25). Further, the ALJ stated that Plaintiff's symptoms "were controlled with treatment, when she was compliant." (Tr. 21); see Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); 20 CFR § 404.1530(a), (b).[3] Thus, the Court concludes that "the ALJ has applied the correct legal standards, accounted for the impairment in the RFC, and provided reasons in his

---

[2] As recognized by the Fourth Circuit, stating the RFC before discussing the claimant's limitations by each relevant function "creates the danger that 'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir. 2006) (quoting Mascio, 780 F.3d at 636). Although not a reversible error on this record, ALJs should heed to this danger.
[3] The ALJ also gave some weight to the opinion of Lisa Suddreth, NP-C, Plaintiff's treating mental health care provider that "claimant is unable to work permanently" and "is under psychiatric care." (Tr. 25 (citing Tr. 418)). However, the ALJ noted that Ms. Suddreth "did not provide any specific functional limitations" and provided an opinion that was "not consistent with the mental health treatment records." (Tr. 25).

analysis for the limitation, which is supported by substantial evidence." See Bushaw, 2018 WL 1972711 at *6-7.

Plaintiff specifically challenges the ALJ's failure to grant more weight to the opinion of Plaintiff's consultative examiner, Dr. Howard R. Slutzky. Plaintiff first contends that the ALJ improperly relied on his own interpretation of the raw medical data when determining Plaintiff's functional level. (Doc. No. 17 at 5). The Court disagrees.

In Webster v. Colvin, No. 1:11-cv-101, 2014 WL 4060570, at *4 (Aug. 15, 2014), the plaintiff made similar arguments to Plaintiff in this case, arguing that the ALJ "'rejected every medical opinion of record regarding Plaintiff's mental limitations and instead [impermissibly] rendered his own medical opinion' in finding her capable of routine, repetitive work." Id. There, the court remanded the case, finding that the ALJ "(1) expressly interpreted the raw data from Plaintiff's treatment notes to discredit the opinions of the psychiatric consultants and (2) used the raw data to formulate an RFC which is unsupported by the uncontroverted opinion evidence in this case." Id. The court found that the ALJ assigned little weight to the consultative psychological examiner and both state agency psychologists, who had offered "the only mental health opinions of record." Id. The court, however, emphasized that "this is *not* a situation in which the record contains conflicting opinions; rather, the three opinions in question *all include work restrictions beyond those addressed by the ALJ*." Id. at *5 (emphasis added). Webster, however, is distinguishable from this case.

Here, the state agency consultants found insufficient evidence to render an RFC (Tr. 106-07, 116-117), and Dr. Slutzky failed to provide any specific functional limitation. (Tr. 22, 25).[4]

---

[4] Dr. Slutzky concluded that Plaintiff was unable to work (Tr. 22, 25). However, opinions that a claimant is disabled or unable to work are outside of the purview of medical sources and are reserved for the Commissioner. Ballard v. Colvin, 90 F.Supp.3d 470, 477 (M.D.N.C. 2015); Carter v. Colvin, No. 1:13-cv-334, 2016 WL 1735885, at *13 (M.D.N.C. May 2, 2016).

This is not a case where the ALJ was presented with uncontroverted opinion data that he subsequently rejected and substituted with his own conclusions. Where, unlike Webster, the ALJ is faced with conflicting or inconsistent medical opinions, the ALJ is permitted to consider the medical opinions along with the rest of the relevant evidence to determine the proper RFC. See McNeill v. Berryhill, No. 1:16-cv-1081, 2017 WL 1184187, at *10 (M.D.N.C. Mar. 29, 2017) (stating that, when making the RFC determination, the ALJ is charged with the responsibility of resolving conflicts among medical opinions). Thus, the Court finds that the ALJ properly resolved conflicts and inconsistencies in the record and did not impermissibly rely on his lay opinion in formulating the RFC.

Plaintiff's final challenge to the ALJ's assessment of Dr. Slutzky's medical opinion is that the ALJ erred by merely speculating that Dr. Slutzky merely wrote down what Plaintiff told him and failed to address the other factors the ALJ must consider when evaluating medical opinions. (Doc. No. 12 at 21). This argument is also without merit.

The ALJ is required to weigh and evaluate all medical opinions received, regardless of their source. 20 C.F.R. §§ 404.1527(c), 416.927(c). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Pursuant to governing regulations, an ALJ must evaluate and weigh all medical opinions based on: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654

(4th Cir. 2005); see also 20 C.F.R. § 404.1527. However, whereas courts often accord greater weight to the testimony of a treating physician, see Johnson, 434 F.3d at 654 (citing Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001)), "no such deference is required for a consultative exam." McDonald v. Colvin, No. 3:15-cv-00598-MOC, 2016 WL 4084040, at *4 (W.D.N.C. July 29, 2016) (citing SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).

Here, the ALJ detailed the findings of Dr. Slutzky. (See Tr. 22 (citing Tr. 454-58)). The ALJ noted that Dr. Slutzky examined Plaintiff. (See Tr. 22). The ALJ evaluated the treating relationship by noting that Dr. Slutzky only evaluated Plaintiff on one occasion. (Tr. 24). The ALJ addressed the supportability and consistency of Dr. Slutzky's opinion, explaining that Dr. Slutzky's one-time evaluation was inconsistent with the "longitudinal picture of the claimant's impairment, related limitations, and restrictions" that were indicated in claimant's mental health records. Id. For instance, following his explanation of Dr. Slutzky's findings in December of 2016, the ALJ noted that "[n]evertheless, when the claimant returned to Outreach Management Services in January of 2017. . . the severity and/or intensity of her symptoms was no more than moderate." (Tr. 22–23 (citing Tr. 452)). Accordingly, the Court finds that the ALJ's evaluation of the Dr. Slutzky's medical opinion was proper.

IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 13) is GRANTED and the Commissioner's decision is AFFIRMED.

ORDERED.

Signed: October 17, 2018

Frank D. Whitney
Chief United States District Judge

17